OPINION
{¶ 1} This appeal has been taken from a final judgment of the Mahoning County Court. Appellant, Mark L. Rosine, seeks the reversal of his criminal conviction on three first-degree misdemeanor offenses. For the following reasons, this court concludes that his conviction must be upheld.
 {¶ 2} The charges against appellant stemmed from an incident which occurred at an apartment complex located on North Raccoon Road in Austintown, Ohio. Shortly after 12:00 a.m. on January 8, 2003, a resident of the complex, heard the alarm for his motor vehicle. He looked from his apartment window and saw the lights of his motor vehicle flashing. The car owner then ran from his building into the parking lot of the complex. Although he did not see anyone standing by his vehicle, he did see two young males running down North Raccoon Road.
 {¶ 3} Immediately after the car alarm had been activated, the Austintown Police Department was summoned to the apartment complex. During the subsequent investigation, Officer Ross Leonard was informed that a window on the passenger side of the vehicle had been shattered. In addition, Officer Leonard discovered that two windows in a separate motor vehicle had been shattered in the same manner. The owner of the second vehicle told Officer Leonard that a portable compact disc player and other personal items had been stolen from his vehicle.
 {¶ 4} The first owner was able to provide a brief description of the two males he had seen running from the apartment complex. A short time later, a second member of the Austintown Police Department saw two individuals who matched the basic description. These individuals were getting into a vehicle which had stopped in the parking lot of a restaurant located near the complex. Once the vehicle in question had pulled from the parking lot unto a local street, the second officer initiated a traffic stop.
 {¶ 5} When the second officer required the occupants of the vehicle to exit it as part of the ensuing stop, he discovered that there had actually been four young males in the vehicle. These individuals included appellant, who had been driving the vehicle at the time of the stop. The officer further discovered that two of the males, Sean Howard and Matthew Clingerman, were below the age of eighteen and, thus, were in violation of a local curfew law. As a result, the officer placed these two under arrest. In searching them, the officer found a portable compact disc player in Howard's possession.
 {¶ 6} Appellant was not arrested at that time. However, subsequent interviews with the other three individuals in appellant's vehicle appeared to indicate that he had played a significant role in either planning or executing the crimes. Approximately ten days later, appellant was charged with two counts of criminal damaging and one count of theft. Because each of the three charges was a first-degree misdemeanor, the action against appellant went forward in the local county court. Following his initial appearance, appellant was able to post bail and, thus, was released until his trial was held in May 2003.
 {¶ 7} At the outset of his trial, appellant moved the trial court for a continuance of one week, maintaining that his counsel had not had adequate time to prepare. Specifically, appellant asserted that, due to a misunderstanding, his present counsel did not know until two days before trial that he would be participating in this matter. Even though the trial court gave appellant's counsel an opportunity to discuss the point with the state, no agreement could be reached. The trial court then denied the motion for a continuance.
 {¶ 8} During the abbreviated bench trial, the state based its case primarily upon the testimony of the three males who had been inside appellant's vehicle at the time of the traffic stop. Each of these individuals gave a different version of what had occurred that night. However, each stated that appellant had participated in either the planning or execution of the three crimes. In response, appellant presented evidence which was intended to show that he had been with his girlfriend at the time the crimes took place. He further claimed he merely picked up the other three males after the fact without knowing what they had done.
 {¶ 9} At the conclusion of the trial, the trial court found appellant guilty of each of the three charged offenses. The trial court then sentenced appellant to a term of one hundred eighty days on the theft charge and two separate terms of ninety days on the two criminal damaging charges. The court further indicated in its final judgment that the three terms were to be served consecutively, but also suspended the terms on the theft charge and one of the criminal damaging charges; as a result, appellant was required to only serve a single ninety-day term. Finally, the court placed appellant on probation for one year.
 {¶ 10} Once appellant had filed the instant appeal, the trial court granted a stay of his ninety-day sentence. In now seeking the reversal of his conviction, appellant has assigned the following as error:
 {¶ 11} "The denial by the trial court of defendant's motion to continue the trial was an abuse of judicial discretion which deprived defendant of rights to a fair trial and effective assistance of counsel guaranteed by the United States Constitution V, VI and XIV, and Ohio Constitution Article I, Section 10.
 {¶ 12} "There is insufficient evidence to prove beyond a reasonable doubt that the Appellant did in fact commit all of the offenses he was convicted of."
 {¶ 13} Under his first assignment, appellant submits that his trial counsel should not have been required to proceed on the scheduled date for the trial because: (1) his trial counsel had a legitimate reason for not being completely prepared for trial; and (2) a short continuance would not have prejudiced anyone involved in the case. In regard to the first point, appellant states that the lack of preparedness for trial was caused by a miscommunication between trial counsel and appellant's family concerning whether counsel would be handling the matter. In addition, appellant contends that, as a direct result of the decision on the motion to continue, he was denied his constitutional right to effective assistance of counsel.
 {¶ 14} As an initial issue, this court would note that the record before us does not contain any indication concerning why the trial court decided to overrule the request for a continuance. Specifically, a review of the trial transcript shows that the court reporter was unable to transcribe certain statements the trial court made in response to the oral argument appellant's trial counsel presented in support of the motion. Apparently, the written transcript before us was prepared from an audiotape of the trial, and the judge's statements at this juncture of the proceeding were inaudible. Thus, we can only gleam from the transcript that, since the parties were ordered to go forward in the matter, the motion to continue had to have been overruled.
 {¶ 15} Nevertheless, the lack of a complete trial transcript does not obligate this court to reverse the trial court's ruling on the motion. When the record does not indicate what rationale a trial court employed in ruling upon a motion to continue, the appellate court can still uphold the ruling if the record otherwise demonstrates a lawful basis for the decision. State v. Abdalla, 10th Dist. No. 01AP-439, 2001-Ohio-3941. In the instant case, the trial transcript is sufficient to show that there was a lawful basis for requiring appellant to go forward on the scheduled date of the trial.
 {¶ 16} As a general proposition, the decision to either grant or deny a motion to continue a criminal trial lies within the sound discretion of the trial court. State v. Bean, 2nd Dist. No. 19483, 2003-Ohio-2962, at ¶ 8. Accordingly, a trial court's ruling on such a motion will be reversed on appeal only when the trial record indicates that an abuse of discretion occurred. State v. Unger (1981), 67 Ohio St.2d 65, 67. In the context of the denial of a motion to continue, a mere error in judgment by the trial court is insufficient to show an abuse of discretion; instead, this standard can be satisfied only when the record demonstrates that the trial court's attitude in ruling upon the matter was arbitrary, unreasonable or unconscionable. See Abdalla, supra, 2001-Ohio-3941, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 17} As to the substance of a "continuance" determination, the Supreme Court of Ohio has stated that a trial court's analysis should primarily consist of a balancing test of three considerations: (1) the existence of any potential prejudice for the defendant; (2) the trial court's right to control its own docket; and (3) the public's interest in ensuring that justice is rendered promptly and efficiently. Unger,
supra, at 67. In addition, the Unger court stated that, in determining the amount of weight to be given to the foregoing considerations in any particular case, a trial court should focus on the following factors: "* * * the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors depending on the unique facts of each case." Id., at 67-68.
 {¶ 18} In the instant appeal, the record before us shows that appellant only asked the trial court for a seven-day continuance, and that this was the sole continuance he had sought in the entire proceeding. On the other hand, the record further shows that appellant did not make his motion until the very date and time for trial. Thus, the other participants in the trial, including the trial court itself and the various witnesses, would have been inconvenience by any continuance because they were already prepared to go forward. Finally, regarding the basic reason underlying the continuance request, our review of the trial transcript demonstrates that the motion was based entirely upon the following statement by appellant's trial counsel:
 {¶ 19} "Your Honor, there appeared to be a miscommunication. I had gotten a call from Mr. Rosine's mother who indicated to me that we're making it tough to get together (inaudible). I then followed up with a call that I received from Attorney David Betras's office that the Rosines had been in contact with him, that they were representing him. I did not speak directly to Mr. Betras's office. That came by way of someone in my office, and then when I didn't hear from the Rosines, I assumed that Attorney Betras or someone from his office was on the case.
 {¶ 20} "Anyway, to make a long story short, we're here today. The Rosines did not retain any other attorney. However, I did not know that until about two days ago."
 {¶ 21} Under the foregoing explanation, trial counsel's lack of preparedness was due to a legitimate misunderstanding as to whether he had been retained to represent appellant. This court would agree that such a misunderstanding should not be held against appellant for purposes of deciding whether a continuance was warranted. We are compelled to further note however, that under counsel's version of the events, appellant and his family were dilatory in contacting him about the matter until two days before the date of the trial. Even if appellant and his family truly thought that trial counsel was fully aware that he had been retained, it was inexcusable negligence for them to fail to re-establish contact with counsel until two days prior to trial. Appellant was aware he was charged with three first-degree misdemeanors. Two days could have constituted inadequate time to prepare for trial.
 {¶ 22} As to the foregoing point, this court would also emphasize that appellant was released on bail in late January 2003, immediately after the charges had been filed against him. Appellant's trial was then held on May 15, 2003. Thus, appellant and his family had over one-hundred days in which to contact trial counsel and begin preparing his defense in the case. Since the proper preparation of a criminal case must involve consultation with the client, the burden was upon appellant to maintain contact with the person he felt was his trial counsel to see if any further preparation was needed. If appellant had maintained sufficient contact, any dispute as to which attorney was representing him would have been settled in time to allow his actual counsel to prepare an adequate defense. It was appellant's inaction which was the primary factor in creating the circumstances resulting in the need for a continuance.
 {¶ 23} In considering factual scenarios similar to the circumstances in this matter, the courts of this state have held that the fact that the criminal defendant was dilatory in assisting in the preparation of his defense should be accorded significant weight when the denial of a motion to continue is reviewed on direct appeal. For example, in State v.Reaves (Aug. 24, 1995), 8th Dist. No. 67597, 1995 Ohio App. LEXIS 3458, the criminal defendant moved for a continuance on the day of the trial, arguing that he needed more time to consider a possible plea agreement and to tend to his personal affairs. As part of its decision upholding the defendant's conviction, the appellate court stated that the defendant had been released on bail for five weeks prior to his trial. Based on this, the Reaves court concluded that the trial court had not abused its discretion in denying the continuance request because the defendant had had sufficient time to meet and consult with his attorney about the case. See, also, State v. Burrington (Dec. 18, 1987), 11th Dist. No. 12-109, 1987 Ohio App. LEXIS 10133.
 {¶ 24} In the instant matter, it is feasible that appellant may have been prejudiced by the denial of his motion. However, the possibility of prejudice was clearly outweighed by the untimeliness of the motion and appellant's own dilatory behavior. In other words, the sole reason for the "continuance" request was appellant's failure to maintain proper contact with his trial counsel. As a result, this court holds that the trial court did not abuse its discretion in denying the motion for a continuance of appellant's trial.
 {¶ 25} In light of the foregoing analysis, it logically follows that appellant was not denied his constitutional right to effective assistance of counsel. Under these circumstances, it cannot be said that the trial court denied appellant the opportunity to be represented by the counsel of his choice. Thus, appellant's entire first assignment of error lacks merit.
 {¶ 26} Under his second assignment, appellant contends that he should not have been found guilty of two of the three charges because there was insufficient evidence to support his conviction on the single theft charge and one of the two criminal damaging charges. In support of this contention, appellant maintains that, even though the state presented the testimony of all three of the individuals who were in appellant's vehicle at the time of the traffic stop, two of the individuals never testified that they actually saw him breaking into the two vehicles at the apartment complex. Appellant further asserts that the testimony of the third individual, Matthew Clingerman, was insufficient to convict him on all three charges because Clingerman only stated that appellant had used a cement punch to shatter the windows in one of the two cars.
 {¶ 27} Upon reviewing the trial transcript in this appeal, this court concludes that appellant's description of Matthew Clingerman's testimony is simply incorrect. During the course of his direct examination, Clingerman was shown photographs of two motor vehicles which had sustained damage in the parking lot of the apartment complex. After looking at each photograph, Clingerman testified that appellant had "busted" a window in each vehicle. Similarly, upon being shown a photograph of the first victim's portable compact disc player, Clingerman stated that he saw appellant take the item from one of the vehicles.
 {¶ 28} In relation to the disc player, the transcript indicates that Clingerman was somewhat confused as to which vehicle had contained the player. In fact, Clingerman appeared to imply during his testimony that appellant had broken the windows on more than two vehicles in the parking lot. Nevertheless, Clingerman's confusion clearly did not extend to what role appellant had played in the theft of the disc player. Clingerman specifically stated that appellant had taken the disc player from one of the vehicles after shattering a window.
 {¶ 29} Pursuant to R.C. 2913.02(A)(1), a person can be found guilty of theft if: (1) he knowingly exerts control over the property of a second person; (2) he exercises such control without the consent of the second person; and (3) he has the intent to deprive the second person of the property. Moreover, under R.C. 2909.06(A)(1), a person can be found guilty of criminal damaging if he knowingly causes physical harm to a second person's property without the latter person's consent. In this case, when the testimony of Matthew Clingerman is read in the context of the other evidence presented during the trial, it is clear that his testimony was sufficient, in and of itself, to satisfy all elements of the foregoing two offenses. Clingerman's testimony not only established that appellant knowingly took the disc player without the consent of the owner, but further demonstrated that he knowingly caused physical harm to two separate vehicles without the consent of the owners.
 {¶ 30} In regard to the "sufficiency" issue, the state submits that, even if the trial court chose to reject Matthew Clingerman's version of the events, there was still ample evidence to support appellant's conviction on all charges. A review of the trial transcript confirms the state's assertion on this point. The other two individuals who had been in appellant's vehicle the evening of the incident, Sean Howard and Nicholas Clingerman, testified that, even though appellant did not actually participate in the commission of the crimes, he did formulate the basic plan for the crimes. Specifically, they stated during their testimony that: (1) it had primarily been appellant's idea to steal car stereos from the vehicles in the apartment complex; (2) appellant gave them the cement punch and told them how to use it on the windows of the vehicles; and (3) appellant drove them to an area near the complex, and was supposed to drive them away after the crimes were completed.
 {¶ 31} Again, when considered in the context of all the evidence presented by the state, the testimony of Sean and Nicholas was sufficient to establish that appellant had, at the very least, assisted the other individuals in the commission of all three offenses. Thus, despite the fact that appellant was charged as a principal offender, he still could have been convicted, under R.C. 2923.03, of complicity in regard to all three crimes. See State v. Herring (2002), 94 Ohio St.3d 246, 251.
 {¶ 32} As this court has stated in numerous prior opinions, the term "sufficiency of the evidence" refers to the legal standard for determining if the state's evidence in a criminal case is adequate to warrant its submission to the trier of fact; pursuant to this standard, the state's evidence will be deemed "sufficient" if any rational trier of fact could find that the state has proven beyond a reasonable doubt the existence of each element of the crime. See State v. Wright, 7th Dist. No. 03 MA 112, 2004-Ohio-6802. In the instant case, regardless of which version of the various events the trial court chose to believe, the state's evidence was legally adequate to satisfy the foregoing standard as to each of the three charges against appellant. Therefore, appellant's second assignment of error in this appeal also lacks merit.
 {¶ 33} In light of the foregoing analysis, the judgment of the trial court is affirmed.
Ford, P.J., Eleventh Appellate District, sitting by assignment,
Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.